IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| WILLIAM HOLTZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 14-CV-367-NJR-DGW |
| | ) | |
| JOHN COE, WEXFORD HEALTH | ) | |
| SOURCES, INC., and ELAINE | ) | |
| BURCHAM, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff William Holtz, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit on March 21, 2014, alleging his constitutional rights were violated while he was incarcerated at Lawrence Correctional Center ("Lawrence"). More specifically, Holtz alleges that medical personnel at Lawrence denied him treatment for a broken hand and, as a result of inadequate and delayed treatment, his hand healed incorrectly. Following a merits review of the complaint pursuant to 28 U.S.C. § 1915A, Holtz was allowed to proceed on one count of deliberate indifference against Phil Martin, the medical director of Lawrence, and Dr. John Coe, a treating physician at Lawrence. Magistrate Judge Donald G. Wilkerson recruited counsel to represent Holtz on June 27, 2014 (*see* Docs. 25, 26)

On April 28, 2015, Defendant Martin was dismissed, without prejudice, due to Holtz's failure to exhaust his administrative remedies against this defendant (*see* Doc.

49). Subsequently, Holtz sought, and was granted leave, to file an amended complaint (*see* Docs. 55, 59-60). In his amended complaint, Holtz sets forth the following claims:

Count I: Deliberate indifference claim against Defendant Dr. John Coe for failing to assess, provide and/or refusing to provide timely treatment for Plaintiff's hand injury.

Count II: Deliberate indifference claim against Defendant Elaine Burcham (f/k/a Elaine Hardy), N.P., for failing to refer Plaintiff to an orthopedist and/or failing to ensure Plaintiff was evaluated and treated by Defendant Coe for his hand injury.

Count III: Medical negligence claim against Defendant Elaine Burcham (f/k/a Elaine Hardy), N.P., for breaching the applicable standard of care in treating Plaintiff's hand injury.

Count IV: Deliberate indifference claim against Defendant Wexford Health Sources, Inc., for failing to adequately staff the healthcare unit at Lawrence.

Count V: Respondeat superior claim against Defendant Wexford Health Sources, Inc., for the acts and omissions brought against Defendant Burcham for medical negligence.

(*see* Doc. 60).

Following the filing of the amended complaint, Defendants Burcham and Wexford filed a motion to dismiss Counts III and V (Doc. 69) and a motion for summary judgment on the issue of exhaustion of administrative remedies (Doc. 71), to which Holtz filed timely responses (Docs. 76 and 77). Defendants Burcham, Coe, and Wexford also filed a motion for summary judgment on the merits (Doc. 80), to which Holtz again filed a timely response (Doc. 82). Defendants' dispositive motions are now before the Court.

<u>DISCUSSION</u>

I.  **Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 71)**

   **A. Relevant Procedural Background**

Defendants Burcham and Wexford filed a motion for summary judgment on the issue of exhaustion (Doc. 71). In support of their motion, Defendants explain that, prior to being named as defendants in Holtz's amended complaint (*see* Doc. 60), the Court found that Holtz had failed to exhaust his administrative remedies against Phil Martin, who was dismissed from this action without prejudice due to Holtz's failure to exhaust his administrative remedies (*see* Docs. 45 and 49). Defendants Burcham and Wexford set forth similar arguments asserting they are similarly entitled to summary judgment.

   **B. Relevant Factual Background**

As neither party has set forth facts that differ from those found by the Court in its previous order on Defendant Martin's motion for summary judgment on the issue of exhaustion, it notes the following relevant facts. Holtz filed a grievance complaining about the medical treatment, or lack thereof, for his broken left hand on January 3, 2014 (*see* Doc. 1-1, pp. 3-4). Specifically, Holtz complained that he did not receive proper care for his broken hand and, as a result, it healed improperly (*Id.*). Holtz's counselor responded to this grievance on January 17, 2014, indicating that Holtz was approved for a medical evaluation at Carle Clinic (*Id.* at p. 3). At the *Pavey* hearing held on December 2, 2014, Holtz testified that, upon receiving his counselor's response, he placed this grievance into the grievance box to be forwarded to the Grievance Officer (*see* Doc. 45, p. 3). The Grievance Officer received this grievance on February 6, 2014, but did not issue a

response until June 2, 2014, after which the Chief Administrative Officer ("CAO") responded on June 5, 2014 (*see* Doc. 38-1, p. 6), well after Holtz filed this lawsuit on March 21, 2014.

### C. Legal Standards

Summary judgment is proper only if the moving party can demonstrate "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha Cnty.*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*.

***Exhaustion Requirements under the Prison Litigation Reform Act***

The Prison Litigation Reform Act ("PLRA") provides:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999) (stating that § 1997e(a) of the PLRA "makes exhaustion a precondition to suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; Defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. See *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. In *Pavey*, the Seventh Circuit instructed district courts to conduct a hearing to determine whether a plaintiff has exhausted his remedies. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). If a plaintiff has exhausted his remedies, the case will proceed on the merits. If, however, a plaintiff has not exhausted, the Court may either allow the plaintiff to exhaust or terminate the matter.

*Exhaustion Requirements under Illinois Law*

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally with his Counselor. ILL. ADMIN. CODE TIT. 20, § 504.810(a). If the complaint is not resolved, the inmate may file a

grievance within sixty days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id*. § 504.810(b). The grievance officer is required to advise the CAO at the facility in writing of the findings on the grievance. *Id*. § 504.830(d). The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. *Id*. § 504.830(d). An inmate may appeal the decision of the CAO in writing within thirty days to the Administrative Review Board ("ARB") for a final decision. *Id*. § 504.850(a). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate's administrative remedies are not exhausted until the appeal is ruled on by the ARB. *See Id*. The ARB shall make a final determination of the grievance within six months after receipt of the appealed grievance, where reasonably feasible under the circumstances. *Id*. § 504.850(f).

An inmate may request a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. *Id*. § 504.840. If, after receiving a response from the CAO, an offender feels the grievance has not been resolved, he may appeal in writing to the ARB within thirty days after the date of the CAO's decision. *Id*. § 504.850(a).

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v.*

*Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 F. App'x 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained of conditions. *See Wilder*, 310 F. App'x at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

### D. Analysis

While the Court stands by its reasoning in dismissing without prejudice Defendant Phil Martin due to Holtz's failure to exhaust, the Court comes to a different conclusion with respect to Defendant Wexford and Defendant Burcham, finding that Holtz was thwarted in his attempts to exhaust his grievance dated June 5, 2014, prior to filing his *amended* complaint naming Wexford and Burcham as defendants in this case.

As explained in this Court's previous Order (by way of adopting Magistrate Wilkerson's Report and Recommendation), Section 504.830(d) of the Illinois Administrative Code provides that an offender should be notified of the decision of the CAO on a grievance within two months of it having been filed, "where reasonably feasible under the circumstances." In this case, the Court found that Holtz had not waited a sufficient amount of time before filing his original complaint on March 21, 2014,

because the Illinois Administrative Code clearly allows for the grievance officer and CAO to respond to an inmate's grievance beyond a two month time period. By June 5, 2014, however, when the CAO provided a response to the grievance filed on January 3, 2014, Holtz's attempts to fully exhaust were thwarted, and the Court finds that prison officials did not respond to the grievance within the time period specified in the regulations and, as such, they unduly delayed the grievance process without offering any explanation for the delay that would fall within the exception to the regulation. Accordingly, the Court finds that, prior to filing his amended complaint and setting forth, for the first time, any claims against Defendant Wexford and Defendant Burcham, Holtz was thwarted in his attempts to exhaust his claims against these defendants. *See Barnes v. Bailey*, 420 F.3d 673, 678 (7th Cir. 2005) (when the plaintiff's complaint was the "functional equivalent of filing a new" suit with new claims against new individuals, then plaintiff need only exhaust before filing that complaint). For these reasons, Defendant Wexford's and Defendant Burcham's motion for summary judgment on the issue of exhaustion (Doc. 71) is denied.

## II.    Motion to Dismiss Count III and Count IV of the Amended Complaint (Doc. 69)

Defendants Burcham and Wexford filed a Motion to Dismiss Counts III and V of Holtz's Amended Complaint (Doc. 69). Although titled as a motion to dismiss, Defendants ultimately ask the Court in the motion to "enter summary judgment in their favor." (Doc. 69, p. 3, Doc. 70, p. 4). In Defendants' Motion for Summary Judgment filed on February 15, 2016 (Doc. 81), Defendants make the same arguments as to Counts III and V that are raised in this motion. Accordingly, the Court denies as moot the Motion

to Dismiss (Doc. 69). Defendants' arguments pertaining to Counts Three and Five will be addressed in the next section.

### III.   Motion for Summary Judgment on the Merits (Doc. 80)

#### A.  Relevant Factual Background

Holtz was involved in a physical altercation with another inmate on October 8, 2013 (Plaintiff's Medical Records, Doc. 81-3, p. 1; Deposition of John Coe, Doc. 70-1, pp. 11-12, 20). As a result of the physical altercation, Holtz was evaluated by non-defendant Nurse Troyer who examined his hand, noting that it was swollen, but there was good capillary refill, and Holtz was able to move his fingers well (Doc. 81-3, p. 1; Deposition of Elaine Burcham, Doc. 81-2, p. 5). Nurse Troyer indicated that Holtz was to follow-up as needed (Doc. 81-3, p. 1; Doc. 70-1, pp. 13-14). Defendant Dr. Coe reviewed Nurse Troyer's assessment of Holtz's injury on the same date and, agreeing with Nurse Troyer's assessment, signed off on the injury report without conducting a physical examination (*see* Doc. 81-3, p. 1; Doc. 70-1, pp. 11-12, 54).

Holtz was again seen on October 9, 2013, this time by non-defendant Nurse Arbuckle who, after examining Holtz's hand, noted that it was pale, warm to touch, swollen, and tender (Doc. 81-3, p. 3; Doc. 70-1, pp. 18-21, 26). On Holtz's medical record, Nurse Arbuckle circled the notation "Refer to MD," meaning Holtz was to be referred to either the physician at Lawrence, Defendant Coe, or one of the nurse practitioners on staff (Doc. 70-1, pp. 25-26; Doc. 81-2, pp. 12-13). Holtz was seen by Defendant Burcham, a nurse practitioner, on October 10, 2013 (Doc. 81-3, p. 4; Doc. 81-2, p. 7). Defendant Burcham examined Holtz's hand and noted that it was bruised, tender, and swollen (*Id.*). Defendant Burcham also reviewed an x-ray taken of Holtz's hand (it is unclear when this

x-ray was ordered and when it was taken), finding that Holtz had suffered a fracture of his left hand (Doc. 81-3, p. 4; Doc. 81-2, pp. 7-8). Defendant Burcham then placed Holtz's hand in a splint cast and provided Holtz with a prescription for Motrin for two weeks (Doc. 81-3, p. 4; Doc. 81-2, pp. 8-9). Defendant Burcham ordered that Holtz be seen by Defendant Coe for a follow-up appointment the next week, on October 15, 2013 (Doc. 81-3, p. 4; Doc. 81-2, p. 9).

Holtz was not seen by Defendant Coe at his follow-up appointment on October 15, 2013 (Doc. 70-1, p. 31). Defendants are not aware of why Holtz was not seen by Defendant Coe for his scheduled follow-up appointment (Doc. 70-1, p. 31; Doc. 81-2, p. 13). At Lawrence, inmates who are ordered to receive follow-up care have their medical charts placed in a drawer for nurses to review and execute orders that need to be addressed (Doc. 81-2, p. 10). In this instance, Holtz's medical record dated October 10, 2013, was signed-off on by non-defendant Nurse Jeanie Stevens indicating she had carried out Defendant Burcham's orders (Doc. 81-2, p. 13; *see* Doc. 81-3, p. 4). There is no record regarding the scheduling of an appointment on October 15, 2013, however, or any rescheduling of this appointment.

Holtz's hand was not examined again until December 16, 2013, when Holtz was seen for a "Combo Chronic Care Clinic" by Defendant Burcham (Doc. 81-3, p. 8). At this appointment, Defendant Burcham observed that Holtz had not seen Defendant Coe for a follow-up of his left hand fracture, so she ordered additional x-rays to determine the current status of Holtz's fracture (Doc. 81-2, p. 14; *see* Doc. 81-3, p. 8). An x-ray of Holtz's hand was taken on December 18, 2013, and Holtz was again seen by Defendant Burcham

on December 27, 2013 (Doc. 70-1, p. 36; *see* Doc. 81-3, pp. 10-11). Defendant Burcham ordered that Holtz be seen by Defendant Coe the following week, finding that the fracture had not healed (Doc. 70-1, p. 36; *see* Doc. 81-3, p. 11). Defendant Coe examined Holtz's left hand on January 3, 2014, noting the presence of a fracture of Holtz's left proximal third metacarpal, a fracture Defendant Coe described as "unusual" during his deposition (Doc. 70-1, pp. 36-37, 48; *see* Doc. 81-3, p. 16). Based on his findings, Defendant Coe initiated a referral for Holtz to be examined by an orthopedic surgeon (*see* Doc. 81-3, p. 16).

### B.  Legal Standard

As set forth above, summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Defendants, as the moving parties, bear the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against them. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence*, 391 F.3d at 841. The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted).

### C.  Analysis

***Counts One, Two, and Four: Deliberate Indifference***

In Counts One, Two, and Four, Holtz asserts that Defendants Coe, Burcham, and

Wexford, respectively, were deliberately indifferent to his hand injury. Specifically, in Count One, Holtz alleges that Defendant Coe was deliberately indifferent in failing to assess and provide timely treatment to address his injury, or, in refusing to provide treatment. With regard to Count Two, Holtz asserts that Defendant Burcham was deliberately indifferent to his hand injury in failing to refer Holtz to an orthopedist and failing to ensure Holtz was evaluated and treated by Defendant Coe. Finally, in Count Four, Holtz alleges that Defendant Wexford was deliberately indifferent in failing to adequately staff the healthcare unit at Lawrence with providers who possessed sufficient vigor and stamina to adequately provide the quantity and quality of healthcare services needed.

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on this claim, Holtz must show first that his condition was "objectively, sufficiently serious" and second, that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).

With regard to the first showing, the following circumstances could constitute a serious medical need: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008)

(quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie Cnty.*, 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

A prisoner also must show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even recklessness as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823, F.2d 1068, 1072 (7th Cir. 1987). Put another way, a plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. A plaintiff does not have to prove that his complaints were "literally ignored," but only that "the defendants' responses were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes*, 546 F.3d at 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)).

With regard to the objective requirement—whether Holtz's hand fracture constituted a serious medical need—the Court notes that Defendants do not specifically address this issue. In any event, the Court finds that a layman would find Holtz's hand

fracture worthy of comment or treatment by a medical professional, and Holtz's injury was indeed diagnosed by a physician as mandating treatment. *Foelker*, 394 F.3d at 512-13. The Court thus finds that Holtz's medical condition constituted a serious medical need. But the Court's inquiry does not end there. The Court also must find sufficient evidence that Defendants were deliberately indifferent to Holtz's medical condition in order for Holtz's claims to survive summary judgment.

### Defendant Dr. John Coe

Defendant Coe asserts he is entitled to summary judgment on Holtz's deliberate indifference claim because he had no knowledge that Holtz suffered a fracture to his left hand prior to January 3, 2014, when he initiated Holtz's referral to an outside orthopedic specialist.

The undisputed evidence establishes that Defendant Coe reviewed the injury report dated October 8, 2013, and signed off on Nurse Troyer's assessment of Holtz's injury. Specifically, Defendant Coe agreed that Holtz be seen only as needed, based on the objective finding that although Holtz's hand was swollen, there was good capillary refill, and Holtz was able to move his fingers. Although it was later determined that Holtz had suffered a fracture in his left hand, this diagnosis was not made until October 10, 2013, after Defendant Coe had reviewed Holtz's initial injury report. Also, Defendant Coe was not made aware of the fracture until he examined Holtz on January 3, 2014, at which time he initiated Holtz's referral to an orthopedic specialist. Even when viewed in the light most favorable to Holtz, Defendant Coe's treatment decisions in this case do not amount to deliberate indifference; there is simply no evidence that Defendant Coe failed

to assess or refused to provide timely treatment to Holtz.

With regard to Defendant Coe's review of the October 8 injury report, there is no evidence to support a finding that Defendant Coe's agreement with Nurse Troyer's assessment amounted to deliberate indifference. Indeed, at his deposition, Defendant Coe explained that he reviewed Nurse Troyer's findings and, although it was noted that Holtz's left hand was swollen, he had good circulation, leading Dr. Coe to believe the injury was not serious. Based on the information available to Defendant Coe at that time, the Court cannot say Dr. Coe's failure to immediately examine Holtz or provide further treatment was "blatantly inappropriate" or such a significant departure from accepted professional standards or practices to amount to deliberate indifference, especially in light of the fact that Holtz was directed to follow-up as needed, and Holtz did, in fact, follow-up the next day when his symptoms had worsened. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

Following Defendant Coe's review of Holtz's injury report on October 8, 2013, it is undisputed that Holtz was diagnosed with a fracture in his left hand on October 10, 2013, and scheduled to see Defendant Coe on October 15, 2013. It is further undisputed that Holtz never saw Defendant Coe on October 15, 2013, for reasons unknown to the parties and to this Court. Indeed, Holtz was not seen by Defendant Coe until January 3, 2014, at which time Defendant Coe was first made aware that Holtz had suffered a fracture in his left hand. At this appointment, Defendant Coe initiated a referral for Holtz to be seen by an orthopedic specialist. Because there is no evidence that the significant delay in Defendant Coe's examination of Holtz is attributable to any action of

this defendant, the Court cannot find that Defendant Coe's treatment of Holtz amounted to deliberate indifference. *See Shields v. Illinois Dep't. of Corr.*, 746 F.3d 782, 797 (7th Cir. 2014) (finding that defendant-physicians were not deliberately indifferent because there was no evidence they had any involvement in making a mistaken referral). For these reasons, the Court finds that Defendant Coe is entitled to summary judgment as to Count One.

The Court need not consider the issue of qualified immunity because it has already concluded that the evidence, when viewed in a light most favorable to Holtz, does not establish a genuine issue of material fact as to whether Defendant Dr. Coe acted with deliberate indifference to Holtz's serious medical need.

### Defendant Elaine Burcham

Defendant Burcham asserts she is entitled to summary judgment on Holtz's deliberate indifference claim because she could not refer Holtz to an outside specialist for treatment, and she was not aware that her orders to schedule a follow-up appointment with Defendant Coe on October 15 had not been carried out.

Based on the evidence before the Court, no reasonable jury could find that Defendant Burcham's treatment decisions established that she both *knew* of a risk of harm to Holtz and *consciously disregarded* that risk. *See Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997). First, Holtz posits that Defendant Burcham was deliberately indifferent in failing to refer Holtz to an outside, orthopedic specialist. Although Holtz complains about this circumstance, there is no evidence to refute Defendant Coe's attestation that nurse practitioners, such as Defendant Burcham, do not make referrals for inmates at

Lawrence to see outside medical providers or specialty practices, as such referrals must be made by physicians (Affidavit of John Coe, M.D., Doc. 81-4, ¶¶ 5-6). In lieu of referring Holtz to an outside provider, because this is outside the scope of her authority at Lawrence, the undisputed evidence establishes that Defendant Burcham examined Holtz's left hand on October 10, 2013, and, finding evidence of a fracture, provided Holtz with a splint cast, a low bunk permit, and prescription for Motrin to ameliorate Holtz's pain, and ordered that Holtz be examined by Defendant Coe the following week, on October 15, 2013. Although Defendant Burcham did not refer Holtz to an orthopedic specialist, her treatment decisions did not amount to any disregard of a serious risk of harm to Holtz, especially in light of the fact that Defendant Burcham ordered that Holtz be seen by Defendant Coe in five days and, in the interim, provided treatment to address the fracture (*i.e.* a splint cast), as well as pain medication. *See Gutierrez*, 111 F.3d at 1374 (finding dismissal of the plaintiff's complaint for failure to state a claim appropriate because a six day wait to see a doctor was not unreasonably long for infected cyst deemed not to be that severe). While it is undisputed that Defendant Burcham's order for Holtz to be scheduled with Defendant Coe on October 15 was not carried out, there is no evidence that the error in scheduling was in any way attributable to her. There is also no evidence that Holtz notified Defendant Burcham of the delay in seeing Defendant Coe for evaluation.

Further, the Court finds that no reasonable jury could find that Defendant Burcham's treatment of Holtz's hand fracture on December 16 and December 27 amounted to deliberate indifference. At the appointment on December 16, 2013,

Defendant Burcham noted that Holtz was referred to see the "MD" (Defendant Coe) in October 2013, but never did and, in the meantime, Holtz had removed his splint cast. Defendant Burcham ordered repeat x-rays of Holtz's left hand (*see* Doc. 81-3, p. 8). The x-rays were taken on December 18, 2013 (*see id.* at p. 10), and Defendant Burcham saw Holtz again on December 27, 2013, at which time she described the fracture as "nonunion" and ordered that Holtz be placed on Defendant Coe's "line" for the next week (*see id.* at p. 11). Holtz was ultimately seen by Defendant Coe on January 3, 2014. Holtz does not articulate, and the Court cannot discern, how the treatment provided by Defendant Burcham in December 2013, evidenced deliberate indifference to Holtz's medical condition. Specifically, upon discovering that Holtz had not been seen by Defendant Coe as ordered in October 2013, Defendant Burcham ordered additional x-rays and, upon finding that Holtz's fracture had not yet healed, or healed improperly, she promptly ordered that Holtz be seen by Defendant Coe. Although Defendant Burcham did not immediately refer Holtz to an outside specialist, it is undisputed that she could not have been made the referral. Thus, when taking the evidence in the light most favorable to Holtz, the Court cannot say that a reasonable jury could find that Defendant Burcham was deliberately indifferent in treating Holtz's hand fracture. For this reason, the Court finds that Defendant Burcham is entitled to summary judgment as to Count Two.

Again, the Court need not consider the issue of qualified immunity because it has already concluded that the evidence, when viewed in a light most favorable to Holtz, does not establish a genuine issue of fact as to whether Defendant Burcham acted with

deliberate indifference to Holtz's serious medical need.

### Defendant Wexford Health Sources, Inc.

Holtz's claim against Defendant Wexford relates to its alleged practice of failing to adequately staff the healthcare unit at Lawrence that resulted in delayed treatment for his left hand fracture.

As articulated by the Seventh Circuit, where a private corporation has contracted to provide essential government services, such as health care for prisoners, the private corporation cannot be held liable under Section 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself. *Shields*, 746 F.3d at 789; *see also Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Accordingly, in order for Holtz to recover from Wexford, he must offer evidence that his injury was caused by a Wexford policy, custom, or practice of deliberate indifference to medical needs, or a series of bad acts that together raise the inference of such a policy. *Id.* at 796. Also, a plaintiff pursuing a policy or practice claim must show that policymakers were aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect the plaintiff. *Thomas v. Cook Cnty. Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2009).

Defendant Wexford contends that it is entitled to summary judgment on Holtz's deliberate indifference claim because Holtz has failed to prove the existence of a policy or custom that inflicted an injury on Holtz and, in any event, there is no evidence that Holtz's allegations concerning Defendant Coe's lack of vigor or stamina caused, or contributed to cause, Holtz's injury.

The heart of Holtz's claim is that he was made to wait an excessively long time—approximately three months—to have his hand fracture examined by a physician, Defendant Coe, and to be referred to an orthopedic specialist. While delays in care may support an inference of deliberate indifference, *see Petties v. Carter,* No. 14-2674, 2016 WL 4631679 (7th Cir. Aug. 23, 2016) (citing *Grieveson,* 538 F.3d at 779; *Edwards v. Snyder,* 478 F.3d 827, 830-31 (7th Cir. 2007)), the Seventh Circuit has noted that plaintiffs often have difficulty ascertaining who, if anyone, is ultimately responsible for that delay. More specifically, in *Shields,* the Seventh Circuit remarked that IDOC and Wexford had diffused responsibility for the inmate-plaintiff's medical care so widely that the plaintiff was "unable to identify a particular person who was responsible for seeing that he was treated in a timely and appropriate way." 746 F.3d at 785-86. These circumstance seem to plague Holtz in this case as well. Unlike in *Shields,* however, the evidence here is sufficient for a reasonable jury to conclude that Holtz's injury was caused by an unconstitutional policy or practice adopted by Defendant Wexford—mainly, Wexford's policy with regard to scheduling patients for follow-up appointments and practice of understaffing the healthcare unit at Lawrence.

Specifically, the evidence, when viewed in the light most favorable to Holtz, supports a finding that Defendant Wexford employed a deficient policy or practice with regard to carrying out medical personnel's orders. The relevant policy or practice, as articulated by Defendant Burcham at her deposition, was for Holtz's chart, with the order that he be seen by Defendant Coe on October 15, 2013, to be placed in a drawer "where [they] had all of our [the physicians'/nurse practitioners'] orders. [They] had a

drawer that all the charts went in—would go into, so the nurses would know that there's orders on that chart that need to be taken off" (Doc. 81-2, p. 10). While Defendant Burcham testified that they "constantly had charts going into that drawer that were followed out" (*Id.* at p. 11), it is apparent that this practice was wholly deficient in this instance, and there was no mechanism to correct or identify the failure of this practice. As Defendant Coe testified at his deposition, "the providers don't have the mechanism to ensure that our orders get carried out properly" (Doc. 70-1, p. 52). Defendant Coe also testified that Holtz's delay in receiving treatment in this case, and the lack of follow-up with regard to his care, was attributable to the fact that "there's a lot of sick people here [at Lawrence]" and it is "busy, probably too busy" (*Id.* at p. 40). Accordingly, a jury could find that Lawrence's healthcare unit was understaffed and that the understaffing likely contributed to, or caused, the breakdown in the scheduling "system" that resulted in a delay in the provision of care for Holtz's hand fracture. Also, Defendant Coe's testimony that "what [they] generally do around here is that they look into it [when things go wrong], and they try to get the personnel to not make the mistakes" implies that similar mistakes have been made in the past, but Wexford has maintained its deficient or "mistake-prone" policy or practice of scheduling patients and understaffing the healthcare unit. A jury could find that this shows that Wexford was aware of the risk created by its practice, but failed to take appropriate steps to protect Holtz. For these reasons, the Court finds that Defendant Wexford has failed to meet its burden in showing it is entitled to summary judgment as to Count Four. Accordingly, Holtz's deliberate indifference claim against Defendant Wexford shall proceed.

With regard to Defendant Wexford's contention that it is entitled to qualified immunity, the Court finds this argument to be unavailing. First, Wexford fails to cite any case law to support its proposition that a *corporation*, rather than an *individual*, may assert this defense. The Court also does not find the case law cited by Defendant, *Sherman v. Four County Counseling Center*, 987 F.2d 397, 401 (7th Cir. 1993), and *Williams v. O'Leary*, 55 F.3d 320, 324 (7th Cir. 1995), controlling because more recent case law from the Seventh Circuit has made clear that it has yet to definitively decide whether or not qualified immunity is available to employees of a private company providing medical services to inmates. *See Currie v. Chhabra*, 728 F.3d 626, 632 (7th Cir. 2013). In *Currie*, the Seventh Circuit discussed the United States Supreme Court's decision in *Filarsky v. Delia*, 132 S.Ct. 1657, 1660 (2012), in which the Supreme Court permitted application of the qualified immunity defense to certain private individuals hired by the government, while also reaffirming its previous holding in *Richardson v. McKnight*, 521 U.S. 399 (1997), in which it categorically rejected immunity for private prison employees by reasoning that the private firm was "subject to the ordinary competitive pressures that normally help private firms adjust their behavior in response to the incentives that tort suits provide—pressures not necessarily present in government departments." (*Richardson*, 521 U.S. at 412). *See id.* Further, in *Currie*, the Seventh Circuit remarked that it found the Sixth Circuit's reasoning in *McCullum v. Tepe*, 693 F.3d 696 (6th Cir. 2012), holding that a doctor providing psychiatric services to inmates is not entitled to assert qualified immunity, persuasive. *See id.* This Court similarly finds the reasoning of the *McCullum* and *Richardson* decisions persuasive. The Court need not determine whether Wexford is

entitled to assert the qualified immunity defense, however, because it finds that the contours of Holtz's Eighth Amendment rights were sufficiently clear that Wexford would have been on notice that a policy or practice leading to a delay in treatment for a fracture would be unlawful. *See Lewis v. Downey*, 581 F.3d 467, 478-79 (7th Cir. 2009) (reciting the standards for qualified immunity).

### Count III: Medical negligence claim against Defendant Burcham

Similar to his deliberate indifference claim against Defendant Burcham, Holtz alleges that Defendant Burcham breached the applicable standard of care in treating Holtz's hand injury, amounting to medical negligence as defined by Illinois State law.

In Illinois, a plaintiff bringing a negligence medical malpractice claim has the burden of proving the following: (1) the proper standard of care against which the defendant physician's conduct is measured; (2) an unskilled or negligent failure to comply with the applicable standard of care; and (3) a resulting injury proximately caused by the physician's want of skill or care. *Sullivan v. Edward Hosp.*, 806 N.E.2d 645, 653 (Ill. 2004) (citation omitted). Further, unless the physician's negligence is so grossly apparent as to be within the everyday knowledge of a layperson, expert medical testimony is required to establish the standard of care and the defendant-physician's deviation from that standard. *Id.* (citing *Purtill v. Hess*, 489 N.E.2d 867 (1986)).

Defendant Burcham asserts that she is entitled to summary judgment on this claim because Holtz has failed to establish any relevant standard of care that she failed to comply with in providing treatment for Holtz's hand fracture. In response, Holtz points to the deposition testimony of Defendant Coe, arguing that his testimony provides that

the applicable standard of care was a referral to an orthopedic surgeon, which Defendant Burcham undisputedly did not do, despite being required to do so once she assumed the role of "MD" on October 10, 2013. Although the Court is mindful of Holtz's argument, the evidence on which he relies is simply too tenuous to survive Defendant Burcham's motion for summary judgment.

First, the Court finds that Defendant Coe's deposition testimony fails to articulate the proper standard of care from which to measure Defendant Burcham's conduct. The relevant testimony is as follows:

> Q:   Was the standard of care for a physician situated as you are, educated as you are in October of 2013 have been a referral to an orthopedic surgeon?
>
> [Objection omitted]
>
> A:   I would have sent him as soon as I knew that there was a fracture.
> Q:   And was that the standard of care for you in that situation?
>
> A:   I would have sent him–we can't treat fractures here, so if somebody has a fracture, we send them to the orthopedist.
>
> Q:   And that's the standard of care for here?
>
> A:   That's the standard of care, yes.
>
> Q:   And because he didn't see you, Mr. Holtz did not receive the benefit of that standard of care in October. Right?
>
> [Objection omitted]
>
> Q:   Of course he knows.
>
> A:   That would be yes.

While the Court acknowledges that a treating physician's deposition testimony

may satisfy the affidavit requirements of 735 ILCS 5/2-622(a)(1), *see Moyer v. Southern Illinois Hosp. Serv. Corp.*, 764 N.E.2d 155 (Ill. App. Ct. 2002), the testimony here is simply insufficient to provide the specific standard of care applicable to Defendant Burcham, who is undisputedly a nurse practitioner, not a physician. As Defendant Coe's testimony specifically provides, the standard of care that he was describing was "for a physician"—there is no mention of what the standard of care would be for a nurse practitioner. The Court thus finds that Holtz has failed to provide the standard of care by which Defendant Burcham's actions should be measured. The Court finds it necessary, however, to address Holtz's contention that Defendant Burcham should be held to the standard of care described by Defendant Coe and applicable to physicians due to her assumption of the role of "MD" in October 2013. More specifically, Holtz asserts that, because Nurse Arbuckle circled the notation "Refer to MD" on Holtz's medical record dated October 9, 2013, and Holtz was subsequently seen by Defendant Burcham, not Defendant Coe, she assumed the role of the MD and should be held to the physician's standard of care.

The Court disagrees with Holtz's analysis and finds the case he relies on, *Nelson v. Union Wire Rope Corp.*, 199 N.E.2d 769 (Ill. 1964), unpersuasive because it concerns an entirely unrelated set of circumstances. While the Court acknowledges that Holtz's medical records reflect that he was referred to an "MD" on October 9, 2013, the deposition testimony of both Defendants Coe and Burcham provide that this indication in the medical record means, in practice, that the inmate should be seen by either the physician on staff or one of the nurse practitioners, whomever is available first (*see* Docs.

70-1, pp. 25-26 and 81-2, pp. 5-6). There also is an alternative procedure available if the nurse determines that the inmate must be seen by the physician, rather than a nurse practitioner (*see* Doc. 81-2, p. 6). Moreover, the Court finds that Defendant Burcham cannot "assume" the duties of a physician because she is necessarily limited by her scope of practice based on her education and training. The Court finds that it would be improper, and possibly leave Defendant Burcham vulnerable to claims of malpractice, if she "assumed" the role of a physician and expanded her scope of practice because she, rather than a physician, was made to examine an inmate, whatever the reason.

For these reasons, Defendant Burcham is entitled to summary judgment as to Count Three.

### Count V: Respondeat Superior claim against Defendant Wexford

As Holtz's *respondeat superior* claim against Defendant Wexford is premised solely on its liability for the alleged acts and omissions of Defendant Burcham for medical negligence, for which the Court has determined Defendant Burcham is entitled to summary judgment, the Court finds that Defendant Wexford is similarly entitled to summary judgment as to Count Five because there are no allegations of direct negligence against this defendant. *See Vancura v. Katris*, 939 N.E.2d 328, 343 (Ill. 2010).

### CONCLUSION

For the reasons set forth above, the Motion to Dismiss Counts III and V filed by Defendants Wexford and Burcham (Doc. 69) is **MOOT**; the Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Defendants Wexford and Burcham (Doc. 71) is **DENIED**; and the Motion for Summary Judgment filed by Defendants Coe, Burcham, and Wexford (Doc. 80) is **GRANTED in part and**

**DENIED in part**. The motion is granted as to Counts One, Two, Three, and Five, and denied as to Count Four. Counts One, Two, Three, and Five are **DISMISSED with prejudice**, and Defendants John Coe and Elaine Burcham are **DISMISSED with prejudice**.

The only remaining count is **Count Four**, a claim of deliberate indifference against Defendant Wexford. Defendant Wexford is the only defendant that remains in this case.

**IT IS SO ORDERED.**

**DATED:   September 26, 2016**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**